## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE RODRIGUEZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2650 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a civil rights action brought under 42 U.S.C. § 1983 by George Rodriguez, who was convicted of the rape and aggravated kidnapping of a juvenile and incarcerated for 17 years before being exonerated by post-conviction DNA testing and released. In an Amended Complaint, Rodriguez asserts nine counts of § 1983 violations against the City of Houston, members of the Houston Police Department ("HPD") Crime Laboratory ("Crime Lab") criminalists and supervisors, and HPD police officers and supervisors, contending that each denied him due process rights and a right to a fair trial due him under the Fourteenth Amendment to the United States Constitution. Pending before the Court are Motions to Dismiss filed by Defendants Reidun Hilleman ("Hilleman Motion") [Doc. # 86], James Bolding ("Bolding Motion") [Doc. # 89], and the City of Houston ("the City"), in which Jose Gonzalez, Eraldo Garcia, and Russell Sisk join ("City Motion") [Doc. # 88]. Plaintiff has responded to

each motion, and the matter is ripe for decision.[1]   After considering the parties'

motions, responses, and the applicable law, the Court concludes that each of the

Motions to Dismiss should be **denied**.

## I.   <u>BACKGROUND</u>

The events summarized here, unless otherwise noted, are drawn from Plaintiff's

allegations in the First Amended Complaint ("Amended Complaint") [Doc. # 67].

In 1987, Plaintiff Rodriguez was the subject of an investigation into the

aggravated sexual assault and kidnapping of a juvenile girl.   According to Rodriguez,

the victim reported being attacked by two men.[2]   The first, Manuel Beltran, was quickly

apprehended and allegedly confessed and identified his accomplice as Isidro Yanez.[3]

As part of the investigation, the Crime Lab tested Rodriguez's blood and hair to

determine whether he could be linked to biological samples recovered from the victim.

Hilleman reported to the City's police department that she had recovered a single hair

from the victim's clothing that could have come from Rodriguez.[4]

---

[1]     No Defendant has filed a reply and the time for such filings has expired.

[2]     Amended Complaint, at 7, ¶ 24.

[3]     *Id*. at 9, ¶¶ 40-42.

[4]     This report was allegedly inconsistent with her initial conclusion that none of the hairs
available for testing matched with Rodriguez.

Rodriguez was arrested on May 1, 1987 and prosecuted for the crime. Rodriguez's defense at trial was that Yanez, not he, was the second rapist. Christy Kim, whom Bolding supervised, informed prosecutors that Rodriguez could have contributed to the semen in the victim and that Yanez could be excluded as a suspect because his blood type was not consistent with the perpetrator's semen.[5] This conclusion and Hilleman's results were introduced at trial.

Rodriguez was convicted by a jury and sentenced to sixty years' imprisonment.[6] He asserts that the scientific testing and resulting reports were fabricated and materially inaccurate. He also contends that he did not provide any blood samples on or before the date the reports purportedly were prepared.[7] He alleges, however, that the Assistant District Attorneys who prosecuted the case in court were unaware of the fabrication.[8]

In 2004, Rodriguez obtained post-conviction DNA testing through a program established by the State of Texas. That testing determined that the hair recovered from the victim's clothing could not have been contributed by Rodriguez and that Yanez was

---

[5]     Amended Complaint, at 28, ¶ 143.

[6]     *See* Judgment on Jury Verdict of Guilty, City Motion, Exhibit 4.

[7]     *See* Amended Complaint, at 25, ¶ 134.

[8]     *See id*. at 26, ¶ 137.

not excludable as a suspect, as had been reported based on the initial testing.  In 2005, a Texas court dismissed all charges against Rodriguez.

In his Amended Complaint (filed at the Court's instructions to clarify the legal and factual theories against each Defendant separately),[9] Rodriguez asserts § 1983 claims against the City, three HPD police officers (Jose Gonzalez, Eraldo Garcia, and Russell Sisk (collectively the "HPD officers")), and two Crime Lab technicians as well as a Crime Lab supervisor, all of whom participated in the criminal investigation giving rise to his conviction.  More specifically, as relevant to the present Motions to Dismiss, Rodriguez contends that Bolding, Kim, and Hilleman violated his Fourteenth Amendment right to a fair trial and due process of law by fabricating evidence purporting to exonerate Yanez, failing to disclose that the evidence was false, and by failing to disclose exculpatory evidence that the City's forensic tests did not in fact point to him as a suspect.[10]  Gonzalez also asserts that Bolding is liable in his supervisory capacity because he failed to adequately train and control Kim, who generated some of the false inculpatory test results.[11]

_____

[9]      *See* Memorandum and Order of October 30, 2006 [Doc. # 57].

[10]      *See* Amended Complaint, Counts One and Two, at 41-43.

[11]      *Id.*, Count Three, at 44.

Rodriguez accuses HPD officers Gonzalez, Garcia, and Sisk of conducting improperly suggestive photo and in-person lineups, and failing to disclose exculpatory evidence of that faulty process.[12]  Finally, Rodriguez accuses the City of violating his rights through its improper policies and customs governing its Crime Lab,[13] such as civilianizing the laboratory, hiring and promoting unqualified individuals (including the people who investigated this case), and failing to train the Crime Lab employees.[14]

Rodriguez also alleges that the City failed to adequately train and supervise the HPD officers and adopted illegal customs and policies regarding identification procedures and other fundamental investigative techniques and duties.  Rodriguez complains that the lack of adequate training and supervision resulted in constitutionally impermissible identification procedures, improper coaching of witnesses, manipulation of witness recollections, and failure to disclose these actions and other material exculpatory and impeachment evidence to prosecutors and defense counsel.  Rodriguez also claims the training and supervision inadequacies caused a lack of compliance with proper methods of securing evidence, of locating suspects, and of pursuing known and

---

[12]     *Id.*, Count Four, at 45-48.

[13]     *Id.*, Count Seven, at 53-54.

[14]     *Id.*, ¶¶ 3, 4, 172-75, 228-36.

exculpatory leads.[15]  Further details of Rodriguez's theories are discussed as relevant below.

Each movant argues that Rodriguez's claims should be dismissed for failure to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).  Bolding's motion additionally requests a judgment on the pleadings.  *See* FED. R. CIV. P. 12(c); City Motion, at 10.[16]

## II.  **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997));  *see Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.  *Id*.  A claim may only be dismissed if the plaintiff is not entitled to relief under any set of facts or any possible theory of recovery that he could prove consistent with the allegations in his complaint.  *Id*. (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

---

[15]     *Id*. at 51, ¶ 223.

[16]     "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The Court accordingly addresses the Bolding Motion under the Rule 12(b)(6) standard.

The plaintiff's complaint must contain allegations of every material point necessary to sustain recovery. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Statements that merely create a suspicion that the plaintiff may have a right of action do not foreclose a motion to dismiss. *Id.* Furthermore, legal conclusions, conclusory allegations, and unwarranted deductions of fact do not suffice to prevent dismissal. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003). However, "although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *EPCO Carbon Dioxide Prod., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (citing *Kansa Reins. Co., Ltd. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

## III.   ANALYSIS

### A.   Hilleman Motion

Rodriguez accuses Hilleman of fabricating inculpatory lab reports purporting to show that Rodriguez was a potential match for hair found on the clothes or the body of the victim of the offense.[17] He alleges that the fabrication "denied George Rodriguez

---

[17]     Amended Complaint, at 42, ¶¶ 190-92

liberty without due process of law."[18]  Rodriguez also characterizes Hilleman's failure to disclose his fabrication as a violation of her "clearly established duty to disclose to prosecutors [her] fabrication of evidence and [her] exculpatory test results and analysis so that prosecutors would disclose it to George Rodriguez and his counsel."[19]

Hilleman, in response, characterizes this claim as substantially similar to that in *Brady v. Maryland*, 373 U.S. 83 (1963).  *Brady* holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  Hilleman relies on *Kuntzer v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002), for the limiting proposition that "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence."[20]  Hilleman asserts further that because the Amended Complaint "fails to show that the alleged exculpatory/impeachment evidence could not have been discovered through the

---

[18]    *Id.* at 42, ¶ 192.

[19]    *Id.* at 43, ¶ 195.

[20]    *Kuntzer* arose in the procedural posture of an application to file a second or successive petition for a writ of *habeas corpus.  Kuntzer*, 303 F.3d at 335.  It does not address civil liability standards under § 1983.

exercise of reasonable diligence by Rodriguez's criminal attorney," Rodriguez has failed to state a claim for which relief could be granted.[21]

Although civil claims brought under § 1983 for denial of Fourteenth Amendment due process rights based on a public officer's alleged concealing of exculpatory evidence may be considered in the context of *Brady*, due process civil claims are not always strictly limited by the criminal rules of the *Brady* framework. *See Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 278 n.5 (5th Cir. 2001) (stating that although neither police officers or lab technicians have a *Brady* duty to disclose exculpatory evidence to criminal defendants, alleging that such parties "elicited false evidence and deliberately concealed exculpatory evidence from all parties, including the prosecution" will support § 1983 liability); *see also Pierce v. Gilchrist*, 359 F.3d 1279, 1292-93 (10th Cir. 2004); *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992). *Brady* is relevant to such civil claims as one important parameter because failure to reveal clearly exculpatory information "violates clearly established constitutional principles." *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) (holding that a *Brady* violation, failing to disclose impermissibly suggestive lineups, may pierce qualified immunity). *Brady* may, depending on the facts, provide a defense to civil defendants on due process claims predicated on the suppression of *Brady* material. *See Burge v.*

---

[21]     Hilleman Motion, at 3.

*Parish of St. Tammany*, 187 F.3d 452, 479-80 (5th Cir. 1999) (analyzing in a § 1983 suit whether allegedly suppressed evidence should have been disclosed under *Brady*).[22] Hilleman, however, has not identified any material omissions in Rodriguez's pleadings, even if Rodriguez's theory of the case is strictly constrained by the *Brady* standards. Rule 12(b)(6), therefore, does not support dismissal of Rodriguez's claims against Hilleman.

Hilleman essentially asserts that Rodriguez has failed to allege a negative in the Amended Complaint; Hilleman points out that Rodriguez has not alleged that even if he had exercised due diligence, he would not have uncovered any suppressed or undisclosed *Brady* material.  Although the absence of due diligence may be a potential defense against Rodriguez's claims, the omission of this allegation is not grounds for dismissal.  A plaintiff's "pleadings need not identify every element of its claim, particularly where the contested elements relate to [an] affirmative defense. . . ." *EPCO Carbon Dioxide Prod.*, 467 F.3d at 470.  No such defense "appear[s] on the face of the complaint."  *Id.*  The fact that the Amended Complaint does not allege that the fabrications were undiscoverable without proper disclosure by defendants is not fatal.  *See id.* at 470.

---

[22]    For instance, a party's failure to disclose evidence to a defendant in a criminal case when the evidence was not required to be produced under *Brady* will not support a later civil claim under § 1983 for deprivation of due process.

Rodriguez's allegations establish the theory that Hilleman deprived him of the due process of law by fabricating inculpatory evidence that led to his conviction by discrediting his defense, and by failing to disclose her misconduct.[23]  He alleges Hilleman's misconduct prevented both him *and* the prosecuting attorneys from learning of the truth in time to evaluate the fabrication and incorporate it into their strategies, both prior to and during trial.  Rodriguez has supplied the necessary "short and plain statement of the claim showing that the pleader is entitled to relief" and a demand for judgment.  FED. R. CIV. P. 8(a).  Hilleman may raise Rodriguez's alleged lack of diligence in defense to the claims, if the facts after discovery support such theory.  Rodriguez's failure to plead facts to overcome the defense does not warrant a dismissal at this stage of the proceedings.

Hilleman also contends that Rodriguez has failed to allege that *Brady* violations were material in that he has not alleged how her testimony prejudiced his defense.[24]

---

[23]    *See* Amended Complaint, at 42, ¶ 190 ("The fabricated evidence . . . was inculpatory because George Rodriguez's defense was that Yanez had been the second rapist, not George Rodriguez."); *id*. at 42, ¶ 192 ("Hilleman's fabrication of evidence denied George Rodriguez liberty without due process of law and as a proximate result of her unconstitutional actions, George Rodriguez sustained damage."); *id*. at 43, ¶ 195 ("[Hilleman] had a clearly established duty to disclose to prosecutors [her] fabrication of evidence . . . so that prosecutors would disclose it to George Rodriguez and his counsel. [Her] deliberate failure to make the required disclosures denied George Rodriguez liberty without due process of law, and as a proximate result of [her] unconstitutional actions, George Rodriguez sustained damage."

[24]    "Rodriguez fails to state a claim for which relief can be granted unless he shows that the disclosure of any date errors . . . were material to opinions provided to the jury by Hilleman
(continued...)

This is unfounded.  Rodriguez alleges that Hilleman's conduct prejudiced his trial in various ways.[25]   The allegations are sufficient to meet federal notice pleading requirements.  Dismissal under Rule 12(b)(6) is not warranted.

### B.   <u>Bolding Motion</u>

Rodriguez asserts claims in three counts against Bolding.  Counts One and Two are based on allegations of Bolding's individual conduct, rather than supervisory liability.  Bolding contends that these should be dismissed because "there is no constitution[al] claim for malicious prosecution,"[26] citing *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).  The Fifth Circuit in *Castellano* held that "no . . . freestanding constitutional right to be free from malicious prosecution exists.  This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted."  *Id.* at 945.  Bolding's argument misconstrues Rodriguez's claims, which nowhere allege relief based on "malicious prosecution."  Rather, Rodriguez alleges

---

[24]   (...continued)
. . . and that the disclosure would likely lead to a different result."  Hilleman Motion, at 2.

[25]   *See, e.g.*, Amended Complaint, at 42, ¶ 190 (alleging that Hilleman's fabrication of evidence inculpated Rodriguez by discrediting his defense that Yanez committed the crime); *id.* at 42, ¶ 190 ("Reidun Hilleman intentionally or recklessly fabricated inculpatory evidence that caused the wrongful conviction of George Rodriguez . . . .); *id.* at 43, ¶ 193 (alleging that proper disclosure of Hilleman's fabrication of evidence would have "impeached trial testimony of, inter alia, Bolding and Hilleman, and would have undermined the prosecutor's argument that scientific evidence refuted George Rodriguez's alibi.").

[26]   Bolding Motion, at 6.

specific pretrial deprivations of due process under the Fourteenth Amendment. *Castellano* does not preclude Rodriguez's claims.

Bolding also asserts that he enjoys absolute immunity for his testimony at Rodriguez's criminal trial. Witnesses are immune from suit based on their testimony at trial, *see Briscoe v. Lahue*, 460 U.S. 325, 329-32 (1984) (lay witnesses not liable under § 1983; based on common-law doctrines and because witnesses' testimony is not given under "color of law"). Rodriguez does not seek relief because Bolding gave inculpatory or perjurious testimony. Rather, Rodriguez asserts that Bolding assisted in the fabrication of evidence[27] and failed to disclose the fabrication prior to trial. Rodriguez asserts that the fact of a fabrication itself was exculpatory evidence.[28] He also asserts that the correct test results were or should have been known to Bolding and Kim, and should have been disclosed as exculpatory evidence. While it is clear that Bolding is immune from suit for any failure to disclose falsehoods during his trial testimony, he has cited no authority that grants him immunity for fabricating or deliberately concealing exculpatory evidence before trial. *See Mowbray*, 274 F.3d at 278 n.5.

---

[27]     *See* Amended Complaint, at 41, ¶ 187.

[28]     *See id.* at 43, ¶ 193.

Bolding points out that his testimony was the only vehicle by which the allegedly fabricated evidence was introduced at trial.   This argument misses the point of Rodriguez's claim; Rodriguez's claim seeks to impose liability arising from the alleged fabrication itself and its alleged pretrial effect on prosecutors' decisions about who to charge criminally, what investigations to conduct, and what theories to prepare and argue at trial. *See Castellano*, 352 F.3d at 958 n.107 ("Defendants cannot shield any pretrial investigative work with the aegis of absolute immunity merely because they later offered the fabricated evidence or testified at trial.").   Bolding's request for dismissal of Counts One and Two is denied.

Bolding is also accused in Count Three of failing to adequately train and supervise Kim, and therefore of being liable for her fabrication of inculpatory evidence and her failure to disclose exculpatory evidence.[29]  Bolding points out that, although Rodriguez alleges that Kim's work was badly flawed in five different criminal cases, only one of those instances occurred "in the year prior to Mr. Rodriguez's criminal conviction."[30]  Two clearly post-dated Rodriguez's conviction; one took place in 1987 but "after the forensic work performed in the Rodriguez case;" and one took place on

---

[29]     *See* Amended Complaint, at 44, ¶ 196-200.

[30]     Bolding Motion, at 5.

"an undisclosed date in 1987."[31]   Bolding asserts that it is impossible to show that he (Bolding) was deliberately indifferent to Rodriguez's rights, a necessary element of the claim.  *See Thompson v. Upshur County, Texas,* 245 F.3d 447, 459 (5th Cir. 2001). Bolding's argument is unavailing.   The Amended Complaint, contrary to Bolding's assertions, alleges that he was aware or should have been aware of Kim's misconduct or performance deficiencies that predate the Rodriguez investigation.[32]  Rodriguez also alleges that Bolding knew that Kim had amended and backdated her August 24, 1987 report and April 22, 1987 bench notes, and that Kim had misreported that Yanez could have contributed to the semen found on the victim.   Rodriguez thus alleges facts to support his conclusion that Bolding was or should have been aware of Kim's negligent or fraudulent work specifically in Rodriguez's case.   These allegations are sufficient to support for pleading purposes the proposition that Bolding "knew, or, in the absence of his deliberate or reckless indifference should have known, that in the course of performing bloody [*sic*] typing work and preparing bench notes and reports in George Rodriguez's case Defendant Christy Kim fabricated evidence . . . and had reached utterly wrong scientific conclusions."[33]   Dismissal of Count Three is not warranted.

---

[31]     *Id.*

[32]     *See* Amended Complaint, at 33, ¶ 159; *id.* at 34, ¶ 160.

[33]     *Id.* at 44, ¶ 197.

C.     **City's Motion**

The City Motion is filed on behalf of the City of Houston and three HPD police officers.  These Defendants argue that the "gravaman [*sic*] of Plaintiff's First Amended Complaint . . . is wrongful conviction" and that the claims amount to "malicious prosecution claims,[34] and thus run afoul of the Fifth Circuit's rule in *Castellano v. Fragozo*, 352 F.3d 939, 959 (5th Cir. 2003)."[35]  This argument is unfounded.  Indeed, Rodriguez's claims alleged in the Amended Complaint against the City are consistent with *Castellano*.

As indicated above, *Castellano* establishes that "'malicious prosecution' standing alone is no violation of the United States Constitution," and the opinion places strict limits on the civil claims that a wrongfully convicted person may assert against the parties involved in the prosecution.  *Id*. at 942, 945.[36]  *Castellano* does not,

---

[34]     City Motion, at 1.  In support of this assertion, these Defendants cite several statements in the Amended Complaint and in Rodriguez's initial disclosures.  *See, e.g.*, Amended Complaint, at 2, ¶ 3 ("Defendant City of Houston caused the wrongful conviction of George Rodriguez."); Plaintiff's Initial Disclosures, City Motion, Exhibit 1, at 4 ("Rodriguez intends to seek damages for his wrongful imprisonment, including but not limited to lost income, mental anguish and loss of consortium.").

[35]     City Motion, at 3.

[36]     "The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted ." *Castellano*, 352 F.3d at 945 (citing FOWLER V. HARPER *ET AL*., THE

(continued...)

however, bar all § 1983 suits based on conduct leading to a wrongful conviction.  The

Court of Appeals held, in the context of a § 1983 claim for deprivation of due process

of law, that "a state's manufacturing of evidence and knowing use of that evidence

along with perjured testimony to obtain a wrongful conviction deprives a defendant of

his long recognized right to a fair trial secured by the Due Process Clause."  *Id*. at 943.

Rodriguez's claims against the City and HPD officers are predicated on factual

allegations similar to those *Castellano* endorsed for a § 1983 due process claim.  *See*

*id*. at 958.  Rodriguez alleges that the City's employees fabricated evidence, failed to

disclose exculpatory evidence and engaged in improperly suggestive identification

processes.  Rodriguez contends that the City is liable because it "maintained a policy,

custom, and practice of operating a substandard crime laboratory,"[37] and because its

"official policies and customs were to employ police officers who were inadequately

trained and supervised with respect to fundamental investigative techniques and

---

[36]     (...continued)
         LAW OF TORTS § 4.1 (3d ed. 1996). "It signifies that initiation of charges without probable
         cause lies at the heart of this definition, one that is deployed by state courts throughout the
         country, including Texas." *Id*. (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515,
         517–18 (Tex. 1997)).

[37]     Amended Complaint, at 52, ¶ 228.

duties."[38]  Rodriguez also alleges that the City "deliberately and systematically failed adequately to train or supervise its employees in the crime lab,"[39] and "failed adequately to train and supervise its District Attorneys with respect to their duty to disclose to defense counsel all material exculpatory and impeachment evidence."[40]  As to the HPD officers, Rodriguez alleges they engaged in a grossly improper identification procedure.[41]   These allegations are ample under the teachings of *Castellano* to state a § 1983 Fourteenth Amendment due process claim against the City and HPD officers.[42]

The City also argues that the State of Texas, which is "not a person within the meaning of 42 U.S.C. § 1983,"[43] had exclusive responsibility for Rodriguez's indictment and prosecution and that the City cannot be held accountable for the prosecutorial decisions made on behalf of the State.  This argument is unavailing.  Had Rodriguez claimed simple wrongful conviction, the proper defendant would be the

---

[38]     *Id*. at 54, ¶ 233.

[39]     *Id*. at 38, ¶ 172.

[40]     *Id*. at 38, ¶ 174.

[41]     *Id*. at 45-48, ¶¶ 201-213.

[42]     The Court does not reach immunity issues, which are not ripe or briefed.

[43]     City Motion, at 3.

State of Texas and dismissal would be appropriate.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  As discussed above, however, Rodriguez's claims are focused on pretrial conduct by the City's employees.  While the prosecution *per se* was pursued under authority of the State of Texas, the individual defendants were City employees, on the City payroll, and supervised by other City employees. Rodriguez alleges City employees provided false evidence to and concealed valid evidence from State officials, the prosecutors.  The City and its employees are "persons" for the purposes of § 1983.  *See Monell v. Department of Social Services*, 436 U.S. 658, 663, 690 (1978).  Rodriguez's claims are not defeated by the prosecution's connection to the State of Texas.

The City last argues that Rodriguez's "complaints of pre-trial deprivations by the City and these individual defendants" must be dismissed because they "did not lead to plaintiff[']s wrongful conviction."[44]  The City urges that, because Rodriguez waived an "examining trial" and because he was indicted by a grand jury, he is precluded by the principles articulated in *Taylor v. Gregg*, 36 F.3d 453 (5th Cir. 1994), from now complaining of pretrial deprivations of process.[45]  The City's arguments are rejected.

---

[44]     City Motion, at 6.

[45]     "An examining trial allows the accused to discover the case against him."  *Id*.

The City is correct that when "facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation, insulating the initiating party."  *Id.* at 456. *Taylor* clearly and explicitly recognizes, however, that "the chain of causation is broken only where all the facts are presented to the grand jury or magistrate and the malicious motive of the officer does not leave him to withhold any relevant information."  *Id.* at 457 (citing *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)). Here, Rodriguez alleges that substantial exculpatory information was concealed from prosecutors, and by implication, from the grand jury, by HPD officers and Crime Lab employees.[46]  Also, other circuits have distinguished claims against police officers who deliberately supply misleading information to influence prosecutors' decisions from the circumstances in *Taylor* and *Hand*.  *See, e.g., Jones v. City of Chicago*, 856 F.2d 985, 993-94 (7th Cir. 1988) (Posner, J.); *see also Pierce*, 359 F.3d 1292-93.  Finally, the City cites no persuasive authority that the failure to request an examining trial bars a § 1983 claim for denial of due process arising from a criminal prosecution based on

---

[46]     *See, e.g.*, Amended Complaint, at 49, ¶ 215 (Defendant police officers "conspired to and did conceal [allegedly unconstitutional lineup procedure] from prosecutors and defense counsel . . . ."); *id.* at 50, ¶ 219 ("The concerted failure by [Defendants] to disclose to prosecutors their evidence fabrications . . . denied George Rodriguez liberty without due process of law.")

grossly suggestive identification procedures of fabricated or false evidence.  The City and HPD officers' Motion is denied.

## IV.   <u>CONCLUSION</u>

Dismissal of claims at this stage of the proceedings is a disfavored remedy. Defendants' Motions to Dismiss have not shown entitlement to such relief.  It is therefore

**ORDERED** that the Motions to Dismiss from Defendants Reidun Hilleman [Doc. # 86], James Bolding [Doc. # 89], and the City Of Houston, Jose Gonzalez, Eraldo Garcia, and Russell Sisk [Doc. # 88] are **DENIED**.

SIGNED at Houston, Texas, this **19**th day of **April, 2007**.

_Nancy F. Atlas_

Nancy F. Atlas
United States District Judge
